UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                              :        Chapter 13

ROSLYN PORTER                                      :

              Debtor                               :        Bankruptcy No. 07-12977bif

.................................................

MEMORANDUM

.................................................

Presently before me is a motion filed by NationsCredit Consumer Discount Company (also known as NationsCredit Financial Services Corp. and referring to itself as NCCDC), which motion seeks to terminate the bankruptcy stay pursuant to 11 U.S.C. § 362(d)(1) and also seeks to "bar[] Debtor Roslyn Porter . . . from filing another bankruptcy proceeding . . . ." Amended Motion, Opening Paragraph. In essence, NCCDC contends that the debtor's present chapter 13 bankruptcy petition was filed in bad faith as an attempt to circumvent the supersedeas bond requirements of Fed. R. Civ. P. 62 and Fed. R. App. P. 7, and thereby prosecute an appeal from adverse district court judgments without NCCDC being permitted to execute. Motion, ¶¶ 5-6.

The debtor filed an answer in opposition to this motion. She asserts that NCCDC's secured claim is "adequately protected" by the provisions of her proposed chapter 13 plan, Answer, ¶ 6, and that she is likely to prevail on her appeal to the Court of Appeals for the Third Circuit from NCCDC's district court judgment. Id., 11. She thus maintains that her chapter 13 filing was done in good faith.

At the hearing held pursuant to 11 U.S.C. § 362(e)(1), it appeared that this lift-stay motion concerns a pre-bankruptcy adjudication by the District Court for the Eastern District of Pennsylvania in favor of NCCDC against the debtor, an appeal by the

debtor of that adjudication, an attempt by NCCDC to execute upon its judgment, and an

unsuccessful attempt by the debtor to obtain a stay of that execution pending appeal.  The

parties agreed that copies of the relevant adjudications would be offered by supplemental

submission and they have done so.  The parties also offered certain documents filed in the

instant chapter 13 case and, as will be mentioned below, I shall take judicial notice of

other documents filed of record in this case.

      I consider the following facts uncontested by these parties.


I.


      On July 20, 2000, NCCDC filed a mortgage foreclosure action in the

Philadelphia Court of Common Pleas, docketed at 000702436, involving the debtor's

residence located at 7110 Grays Avenue, Philadelphia, Pennsylvania.  Debtor's Answer,

Ex. B.  According to the state court docket entries, a judgment in default was entered

against the debtor on October 20, 2000, in the amount of $37,835.01.  Id.

      The debtor then filed a voluntary petition in bankruptcy under chapter 13 on

November 15, 2000, docketed at Bankr. No. 00-34284.[1]  During this 2000 bankruptcy

filing, Ms. Porter proposed a chapter 13 plan which provided in relevant part:

> No secured creditor will be paid through this plan.  The
> claims of NationsCredit will be determined in litigation

---

[1]I take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy
cases by Fed. R. Bankr. P. 9017), of the docket entries in this bankruptcy case, as well as the
docket entries of the debtor's prior case.  See Maritime Elec. Co., Inc. v. United Jersey Bank, 959
F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In
re Paolino, 1991 WL 284107, at *12 n.19 (Bankr. E.D. Pa. 1991); see generally In re Indian
Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

raising TILA claims and claims under section 506 of the
Bankruptcy Code, and all other relevant claims.

NCCDC Amended Motion, Ex. C.  This proposed plan also provided that property of the

bankruptcy estate would revest in the debtor upon confirmation.  Id.; see generally 11

U.S.C. § 1327(b).

On March 14, 2001, the debtor filed an adversary proceeding against

NCCDC (and others) docketed at Adv. No. 01-00157.  On May 7, 2002, without

objection from NCCDC, any other creditor or the chapter 13 trustee, the debtor's

proposed plan was confirmed.  Soon thereafter, the chapter 13 trustee reported that the

debtor had completed her reorganization plan and gave notice to that effect to all

creditors.  Again, without opposition, the debtor received a chapter 13 discharge under

section 1328(a) on December 20, 2002.

On December 26, 2002, the debtor filed another adversary proceeding

against NCCDC (and others), docketed at Adv. No. 02-01435.  On May 15, 2003, I

entered an order dismissing this 2002 adversary proceeding.  And on October 3, 2003, the

district court withdrew the reference of the 2001 adversary proceeding at the debtor's

request.

The withdrawn adversary proceeding was docketed in the district court as

Civ. No. 03-3768, and involved, inter alia, claims asserted by the debtor against NCCDC

based upon the Truth in Lending Act, including loan rescission under 15 U.S.C. § 1635,

as well as a counterclaim raised by NCCDC against the debtor seeking to enforce its loan

agreement.  See NCCDC Amended Motion, Ex. E (decision dated Nov. 14, 2006),

reported at Porter v. Nationscredit Consumer Discount Co., 2006 WL 3333837 (E.D. Pa.

2006).

3

On November 14, 2006, the District Court entered the following judgment in favor of NCCDC and against Ms. Porter:

> VERDICT/CIVIL JUDGMENT
>
> AND NOW, this 14th day of November, 2006, following a bench trial on the merits and pursuant to the attached Findings of Fact and Conclusions of Law,
>
> IT IS ORDERED that the Court finds for NationsCredit Defendants and against Plaintiff Roslyn Porter. The Court holds that NationsCredit Defendants did not violate TILA or the UTPCPL. The Court has already dismissed Defendant Protective Life Insurance Company from the case pursuant to counsel's oral Rule 41 motion, which was granted at the September 12, 2006 bench trial. (Document No. 187).
>
> IT IS ORDERED that Judgment be entered in favor of NationsCredit Defendants and against Plaintiff Rosyln Porter as follows: NationsCredit Defendants is awarded $55,834.22 on its counter-claim.

Id., 2006 WL 3333837, at *9.

On January 3, 2007, the district court denied the debtor's motions under Fed. R. Civ. P. 52 and 59. Porter v. Nationscredit Consumer Discount Co., 2007 WL 30117 (E.D. Pa. 2007). According to the District Court docket entries, NCCDC obtained a writ of execution on its counterclaim on January 24, 2007. The debtor then filed a notice of appeal from the District Court judgments on February 1, 2007.

On February 28, 2007, the District Court denied the debtor's motion for a stay pending appeal without her needing to post a supersedeas bond. NCCDC' Motion, Ex. F, reported at Porter v. Nationscredit Consumer Discount Co., 2007 WL 674709 (E.D. Pa. 2007). The Third Circuit Court of Appeals, on April 13, 2007, then denied the debtor's motion for a stay pending appeal with a waiver of supersedeas bond. NCCDC Amended Motion, Ex. B.

4

A second writ of execution was issued by the District Court on March 1, 2007 and served on March 12, 2007.  An execution sale of the debtor's home appears to have been scheduled for May 24, 2007.  However, the debtor filed the instant second chapter 13 petition on May 22, 2007, triggering the bankruptcy stay under 11 U.S.C. § 362(a).[2]

The debtor's bankruptcy schedules filed with her petition disclose that she values the Grays Avenue realty at $60,000, and believes that NCCDC's secured claim is $55,834.22, albeit disputed.  Schedules A, D.[3]  Her bankruptcy schedules also reveal that the City of Philadelphia holds a delinquent real estate tax lien in the amount of $801.28. The debtor's monthly income from employment is $1,130.62 after taxes, plus $142.00 in child support for her 23 year old daughter, who purportedly is still in school.  Schedule I.

On June 6, 2007, the debtor filed a proposed chapter 13 plan.  Ex. D-1.  The plan states that the debtor will pay the chapter 13 trustee only $25 per month for 36 months.  The plan places the secured claim of  NCCDC in class 3 and states:

> c. CLASS 3 claims: The Trustee will not pay any allowed secured claim in this class.
>
> Debtor will pursue her claims currently pending before the United States Court of Appeals for the Third Circuit in No 06-5099 on behalf of herself and all others similarly situated. Until such time as a final unappealable Order is entered on Debtor's claim for rescission and damages, debtor will pay to NationsCredit Financial Services Corporation directly an

---

[2]I directed that the debtor file a suggestion of bankruptcy with the Court of Appeals.  Apparently, this was done on July 5, 2007.

[3]I shall also take judicial notice of information in the debtor's bankruptcy schedules.  See Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017); Maritime Electric Co. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); In re Indian Palms Assocs., 61 F.3d 197 (3d Cir. 1995).

amount sufficient to provide adequate protection in the form of interest on its security interest, in an approximate amount of $280 monthly.  In the event the debtor is ultimately unsuccessful and NationsCredit is determined to have a valid secured claim against debtor, upon entry of a final unappealable Order, the debtor will re-finance the amount of the allowed secured claim of NationsCredit, unless the creditor agrees to different treatment.

Debtor is not intending to waive any claims against NationsCredit by providing for adequate protection in this provision, including a claim for return of all monies paid pursuant to this provision, if she is ultimately successful in her claims for rescission and damages.

Debtor will avoid the judicial lien of NationsCredit Financial Services in accordance with the provisions of 11 U.S.C. § 522.

Ex. D-1.

A hearing on confirmation is presently scheduled by the chapter 13 trustee for October 16, 2007.

II.

A.

Before focusing on the lift-stay issue before me, I note that I have no authority to review any of the decisions entered by the District Court or the Court of Appeals.  See Teachers Ins. and Annuity Ass'n of America v. Butler, 803 F.2d 61, 66 (2d Cir. 1986) ("[T]he bankruptcy court should not permit the partnership to relitigate issues already decided by [District] Judge Weinfeld, for to allow the partnership to do so, when it knew of the judgment before it filed for bankruptcy, would result in its slipping

arguments through the backdoor that had already been turned away at the frontdoor. . . .

[A]llowing relitigation in the bankruptcy court would subvert the intent of 28 U.S.C. §

1294(1) (1982) which provides that appeals from district court decisions are to be heard

by the court of appeals for the circuit that embraces the district").[4]  However, I have

exclusive jurisdiction to determine whether the bankruptcy stay should be terminated,

modified, conditioned or annulled under section 362(d).  See Acands, Inc. v. Travelers

Cas. and Sur. Co., 435 F.3d 252, 261 (3d Cir. 2006); Constitution Bank v. Tubbs, 68 F.3d

685, 691 (3d Cir. 1995) ("Relief from the stay can be granted only by the bankruptcy

court having jurisdiction over a debtor's case."); Maritime Elec. Co., Inc. v. United Jersey

Bank, 959 F.2d at 1204 ("Only the bankruptcy court with jurisdiction over a debtor's case

has the authority to grant relief from the stay of judicial proceedings against the debtor.").

In deciding whether to terminate, modify, condition, or annul the

bankruptcy stay under section 362(d)(1),[5] I note that the issue is committed to bankruptcy

court discretion, see In re Wilson, 116 F.3d 87, 89 (3d Cir. 1997) ("We review a decision

to deny the automatic stay for abuse of discretion."); Matter of Holtkamp, 669 F.2d 505

---

[4]Thus, I decline the debtor's invitation to apply the Rooker-Feldman doctrine to
invalidate the District Court's decision on NCCDC's counterclaim.  The debtor makes the less
than intuitive argument that the state court foreclosure judgment against her bars NCCDC's
federal counterclaim, but not her own claim to rescind the mortgage.  See generally In re
Knapper, 407 F.3d 573 (3d Cir. 2005); In re Stuart, 2007 WL 1032261 (Bankr. E.D. Pa. 2007).

[5]Section 362(d)(1) states:

(d)  On request of a party in interest and after notice and a hearing, the court shall
grant relief from the stay provided under subsection (a) of this section, such as by terminating,
annulling, modifying, or conditioning such stay--

(1)  for cause, including the lack of adequate protection of an interest in property
of such party in interest[.]

(7th Cir. 1982); In re Shariyf, 68 B.R. 604 (E.D. Pa. 1986), and is to be determined by examining the totality of the circumstances.  See In re Wilson, 116 F.3d at 90; Matter of Baptist Medical Center of New York, Inc., 52 B.R. 417, 425 (E.D.N.Y. 1985), aff'd, 781 F.2d 973 (2d Cir. 1986).  Section 362(d)(1) permits termination of the bankruptcy stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."

Examples of adequate protection are provided in section 361, but there is no definition of the term.  Congress intended that adequate protection be determined on a case-by-case basis.  H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 339 (1977).  It is also worth observing that section 102(3) provides that the use of the term "including" in any statutory provision of the Bankruptcy Code is not limiting.  Thus, cause may exist to terminate the stay under section 362(d)(1) even if adequate protection is provided.  See generally Matter of Holly's, Inc.,140 B.R. 643, 684 (Bankr. W.D. Mich. 1992); H.R. Rep. No. 595, 95th Cong., 1st Sess. 343 (1977) ("The lack of adequate protection of an interest in property of the party requesting relief from the stay is one cause for relief, but is not the only cause.").

For example, since dismissal of a bankruptcy case would terminate the automatic stay by virtue of section 362(c)(2)(B), courts have held that facts that would justify the dismissal of a bankruptcy case also constitute "cause" for granting relief under section 362(d)(1).  See, e.g., In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988); In re Can-Alta Properties, Ltd., 87 B.R. 89, 91 (B.A.P. 9th Cir. 1988) (and cases cited); In re Harris, 192 B.R. 334, 337 (Bankr. W.D.N.Y. 1996); In re Club Tower L.P., 138 B.R. 307, 310 (Bankr. N.D. Ga. 1991); Matter of Nelson, 66 B.R. 231 (Bankr.

D.N.J. 1986), aff'd without op., 838 F.2d 1207 (3d Cir. 1988); In re Augustus Court

Associates,  43 B.R. 352, 354 (Bankr. E.D. Pa. 1984).  Under section 1307(c), a bad faith

bankruptcy filing would warrant dismissal of a chapter 13 case.  See In re Lilley, 91 F.3d

491, 496 (3d Cir. 1996).  Accordingly, a bad faith chapter 13 filing can establish cause to

terminate the bankruptcy stay independent of the issue of adequate protection.  See, e.g.,

In re Maurice, 167 B.R. 114, 125 (Bankr. N.D. Ill. 1994) ("Court's finding that this

[chapter 13] case was filed in bad faith constitutes further 'cause' under section 362(d)(1)

for lifting the stay.").

There is a distinction between a good faith chapter 13 petition, implicit in

section 1307(c), and a good faith chapter 13 plan, an explicit requirement imposed by

section 1325(a)(3).  See, e.g., In re Smith, 848 F.2d 813, 816 n.3 (7th Cir. 1988).  In In re

Lilley, 91 F.3d 491 (3d Cir. 1996), the Third Circuit Court of Appeals held that section

1307(c) must be interpreted as requiring that all chapter 13 cases be filed in good faith:

> It is clear that Chapter 13 contains no explicit good faith
> requirement.  Section 1307(c) provides, however, that Chapter
> 13 petitions may be dismissed "for cause."  11 U.S.C. §
> 1307(c).  The Seventh, Ninth and Tenth Circuits have held
> that lack of good faith in filing is sufficient cause for
> dismissal under section 1307(c).  See In re Love, 957 F.2d
> 1350, 1354 (7th Cir. 1992); In re Eisen, 14 F.3d 469, 470 (9th
> Cir. 1994); In re Gier, 986 F.2d 1326, 1329-30 (10th Cir.
> 1993).  We agree.

Id. at 496.

The Court of Appeals explained that the determination of whether a chapter

13 case was commenced in good faith must be left to the discretion of the bankruptcy

court, based upon the "totality of the circumstances"; moreover, the appellate court

enumerated certain factors as relevant to this good faith analysis:

As the Seventh Circuit has noted, however, "good faith is a term incapable of precise definition." In re Love, 957 F.2d at 1355.  As a result, we believe that "the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court." Id.  We therefore join the Seventh, Ninth and Tenth Circuits in holding that the good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances. In re Love, 957 F.2d at 1355; In re Gier, 986 F.2d at 1329; In re Eisen, 14 F.3d at 470.  Factors relevant to the totality of the circumstances inquiry may include, among others, the following: the nature of the debt . . . ; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors. In re Love, 957 F.2d at 1357.

Id.; see, e.g., In re Myers, 2007 WL 1775125, at *3 (3d Cir. 2007); In re Privitera, 2003 WL 21460027 (Bankr. E.D. Pa. 2003).

In this contested matter, NCCDC contends that the timing of the petition (just prior to a Marshal execution sale), the debtor's motive in filing bankruptcy (to obtain a stay pending appeal without posting a supersedeas bond), and the debtor's treatment of NCCDC's claim (asserting in her confirmed 2002 plan that it would be determined via litgation and then filing a second case with different terms), justify a conclusion that the present chapter 13 case was filed in bad faith.

B.

Before assessing the totality of the circumstances in the context of good faith or termination of the automatic stay, it is relevant to consider the effect of a bankruptcy filing upon an appeal that is pending.

10

When a debtor files a chapter 13 petition, it triggers the automatic stay established by 11 U.S.C. § 362(a).  Section 362(a)(1) stays, <u>inter alia</u>, the commencement or continuation of all prepetition litigation against the debtor.  One intended purpose of the automatic stay is to afford the debtor a respite from the time and expense of litigating with creditors.  <u>Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.</u>, 682 F.2d 446, 448 (3d Cir. 1982) ("The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws.  It gives the debtor a breathing spell from his creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy.") (quoting H.R. Rep. No. 95-595, at 340 (1977)).

In <u>Maritime Elec. Co., Inc. v. United Jersey Bank</u>, 959 F.2d 1194 (3d Cir. 1991), the Court of Appeals explained the precise scope of the bankruptcy stay found in section 362(a) as follows:

> Although the scope of the automatic stay is broad, the clear language of section 362(a) indicates that it stays only proceedings against a "debtor"– the term used by the statute itself.  <u>St. Croix</u>, 682 F.2d at 448.  "The statute does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate."  <u>Id.</u>

> Whether a specific judicial proceeding falls within the scope of the automatic stay must be determined by looking at the proceeding "at its inception."  <u>St. Croix</u>, 682 F.2d at 449.  "That determination should not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs."  <u>Id.</u>  Thus, the dispositive question is whether a proceeding was "originally brought against the debtor."  <u>Id.</u>

***

11

>Thus, within one case, actions against a debtor will be
>suspended even though closely related claims asserted by the
>debtor may continue.  Judicial proceedings resting on
>counterclaims and third-party claims asserted by a defendant-
>debtor are not stayed, while same-case proceedings arising out
>of claims asserted by the plaintiff are stayed.  See First
>Wisconsin National Bank v. Grandlich Development Corp.,
>565 F.2d 879, 880 (5th Cir. 1978) (automatic stay did not bar
>district court's dismissal of debtor's counterclaim in action
>originally brought against debtors, "because the counterclaim
>was not a proceeding against the debtors"); Jefferson Ward
>Stores, Inc. v. Doody Co., 48 B.R. 276, 278-79 (E.D. Pa.
>1985) (automatic stay does not bar district court's denial of
>debtor's Rule 54(b) motion made in connection with third-
>party claim brought by debtor); Boone v. Beacon Bldg. Corp.,
>613 F. Supp. 1151, 1155 (D.N.J. 1985) (stay only operates as
>against actions in which bankruptcy petitioner is in defensive
>posture; thus bankrupt's crossclaim against codefendant for
>contribution is not stayed) . . . .

Id., 959 F.2d at 1204-05 (citations omitted); accord, El Bey v. Quantum Property

Management Corp., 201 B.R. 324 (D.D.C. 1996).

Accordingly, the Third Circuit has construed the scope of section 362(a) as

creating a statutory stay upon a bankruptcy filing of all prepetition actions or claims

against the debtor; however, prepetition actions or claims brought by the debtor which are

pending at the time of her bankruptcy filing are not stayed and may be determined

postpetition (although issues of proper standing may arise).  As a result, NCCDC's

counterclaim against the debtor would be subject to the bankruptcy stay.  Conversely, the

debtor's Truth in Lending claims against NCCDC would not be stayed.

This outcome is not altered by the debtor having taken a pre-bankruptcy

appeal from the district court judgments against her, which appeal is still pending.  The

scope of section 362(a) encompasses appeals from decisions involving claims against the

debtor.  See, e.g., Constitution Bank v. Tubbs, 68 F.3d 685 (3d Cir. 1995); Raymark

12

Industries, Inc. v. Lai, 973 F.2d 1125, 1129 (3d Cir. 1992) ("[T]he automatic stay applies

to all appeals in pre-petition actions against Chapter 11 debtors."); Cathey v.

Johns-Manville Sales Corp., 711 F.2d 60, 61 (6th Cir. 1983) ("[T]he automatic stay of

proceeding is applicable at both the trial and appellate levels."), cert. denied, 478 U.S.

1021 (1986).

       Therefore, section 362(a) stays Ms. Porter's appeal of the counterclaim

judgment against her.  Unless the bankruptcy stay is terminated, the debtor cannot seek

reversal of that judgment in the Court of Appeals.  See Constitution Bank v. Tubbs, 68

F.3d at 693-94; see generally In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142

F.3d 631 (3d Cir. 1998); In re Highway Truck Drivers & Helpers Local Union No. 107,

888 F.2d 293, 298 (3d Cir. 1989); Association of St. Croix Condominium Owners v. St.

Croix Hotel Corp., 682 F.2d at 448-49.  Conversely, the bankruptcy stay would not

preclude an adjudication of her appeal from the adverse judgment on her claims against

NCCDC. Thus, courts have held that a non-bankruptcy forum may dismiss, post-

bankruptcy, any prepetition claim brought by the debtor without violating the bankruptcy

stay in so doing.  See e.g., Martin-Trigona v. Champion Federal Sav. and Loan Ass'n,

892 F.2d 575 (7th Cir. 1989); In re Way, 229 B.R. 11 (B.A.P. 9th Cir. 1998); In re White,

186 B.R. 700 (B.A.P. 9th Cir. 1995).

C.

I shall now consider the totality of the circumstances in this contested

matter to determine whether cause exists to terminate the bankruptcy stay, including

whether Ms. Porter has filed her present bankruptcy case in good faith.

It is clear that Mr. Porter's second chapter 13 petition was filed to prevent a

Marshal sale of her residence, which sale arose from the judgment in favor of NCCDC on

its counterclaim, and because the debtor was unable to obtain a stay pending appeal.

Furthermore, the provisions of Ms. Porter's proposed plan demonstrate that this chapter

13 case was filed with the debtor intending to continue her appeal from the district court

judgment against her.

Although a bankruptcy filing intended to serve in lieu of a supersedeas bond

may not be in bad faith per se, see generally In re Pomodoro Restaurant, 251 B.R. 441

(Table), 1999 WL 282735, at *3 (B.A.P. 10th Cir. 1999), a number of courts have

concluded that a chapter 13 case may be filed in bad faith in such circumstances. See,

e.g., In re Maurice, 167 B.R. 114, 125 (Bankr. N.D. Ill. 1994), modification denied, 179

B.R. 881(Bankr. N.D. Ill.), aff'd, 69 F.3d 830 (7th Cir. 1995); In re Roberts, 117 B.R.

677, 678 (Bankr. N.D. Okla. 1990); see also In re Davis, 93 B.R. 501 (Bankr. S.D. Tex.

1987) (dismissing chapter 11 case as filed in bad faith, where case filed to avoid posting

supersedeas bond); In re Karum Group, Inc., 66 B.R. 436 (Bankr. W.D. Wash. 1986)

(same); cf. Epic Metals Corp. v. Condec, Inc., 232 B.R. 806, 809 (M.D. Fla. 1999)

(denying confirmation of a chapter 11 plan as not filed in good faith where primary

purpose of bankruptcy filing was to circumvent supersedeas bond requirement).

14

As discussed earlier, in this circuit the Court of Appeals has instructed that the bankruptcy stay precludes a debtor from prosecuting an appeal from an adverse judgment based upon a claim against her.  Given that constraint, if a debtor files a bankruptcy case after an adverse judgment on such a claim, she will be unable to challenge that judgment in bankruptcy court due to preclusion principles or jurisdictional concerns (i.e., Rooker-Feldman doctrine), see In re Wilson, 116 F.3d at 90, and will be unable to seek reversal via appeal unless the bankruptcy stay is terminated under section 362(d)(1).  See id.  If a bankruptcy court is concerned that the debtor is misusing the bankruptcy case to circumvent the need for a supersedeas bond, the court can either deny terminating the stay in favor of the debtor, or terminate the stay in favor of both the debtor and the creditor.  See Matter of Highway Truck Drivers and Helpers Local Union 107, 98 B.R. 698, 705 (E.D. Pa. 1989), rev'd as moot, 888 F.2d 293 (3d Cir. 1989).

If the stay is not terminated, the prepetition judgment against the debtor will be an allowed claim in the bankruptcy case to be provided for by a chapter 13 plan.[6]  If the stay is lifted as to both parties, then the debtor and the creditor can assert their respective non-bankruptcy law rights, including the creditor's right to execute.  In either instance, there would be no misuse of the bankruptcy process.

---

[6]If, as in this instance, the judgment creditor holds a secured claim, a chapter 13 debtor may elect not to provide for that secured claim in her chapter 13 plan.  See 8 Collier on Bankruptcy, ¶ 1325.06[1][b] (15th ed. rev. 2006).  Nonetheless, if a confirmed plan does not provide for a secured claim, generally that secured creditor can obtain relief from the bankruptcy stay to exercise its non-bankruptcy law rights to recover its collateral.  See, e.g., In re Vincente, 260 B.R. 354, 357-58 (Bankr. E.D. Pa. 2001); 8 Collier on Bankruptcy, ¶ 1325.06[1][b] at 1325-31.  There will typically be no valid purpose to retain the bankruptcy stay when the chapter 13 plan does not provide for a secured claim.

In this contested matter, it is clear that NCCDC's counterclaim would be stayed by Ms. Porter's bankruptcy filing.  See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d at 1204-05. The debtor's appeal from that judgment is thus similarly stayed.  The debtor's claims against NCCDC, however, would not be stayed by Ms. Porter's bankruptcy filing.  See id.  And so, in theory, an appeal from an adverse judgment on those claims would also not be stayed under section 362(a).

Less clear, however, is whether an appellate court could or would adjudicate an appeal that addressed only Ms. Porter's claims against NCCDC, if the court were unable to review NCCDC's counterclaim judgment because of the bankruptcy stay. That is, an appellate court may conclude that it cannot or should not determine whether a creditor wrongfully refused to rescind a loan, thereby eliminating interest and reducing the principal balance by any payments tendered, see 15 U.S.C. § 1635(b), if there exists a counterclaim judgment in favor of that creditor based upon that same loan, which counterclaim judgment includes interest, and which judgment cannot itself be reviewed by the appellate court.  Cf. Acands, Inc. v. Travelers Cas. and Sur. Co., 435 F.3d at 259-60 (prepetition arbitration action brought by the debtor should have been stayed if the effect of the arbitration ruling could result in a claim against the debtor).

If an appellate court declines to review the district court judgment against Ms. Porter on her claims against NCCDC, and cannot review that creditor's counterclaim judgment because of section 362(a), then Ms. Porter would have no right in this chapter 13 case to propose a chapter 13 plan that provides for NCCDC's secured claim as if the loan had been rescinded.  If the bankruptcy stay were to remain in place, her plan must provide for NCCDC's allowed secured claim.  Conversely, if the appellate court has the

16

power and were willing to consider Ms. Porter's appeal, but only as to the judgment denying her claims, while NCCDC's enforcement of its counterclaim judgment were stayed, then this bankruptcy case may be inequitable and filed in bad faith, as the result would be tantamount to allowing the bankruptcy filing to serve as a supersedeas bond while the debtor continued her appeal.

As to the issue of bad faith, two other factors are germane.

First, the debtor confirmed a chapter 13 plan in a prior case, which confirmed plan did not provide for any payments to NCCDC, and which stated that the outcome of her litigation with NCCDC would be determinative. That plan, upon confirmation, was binding upon the debtor and NCCDC. 11 U.S.C. § 1327(a). In this second chapter 13 case filed five years after confirmation of that earlier plan (and possibly after five years without tendering mortgage payments to NCCDC as the creditor so asserts[7]), the debtor now proposes a plan seeking to modify NCCDC's treatment.

Under her new proposal, if the debtor does not prevail in her litigation, she will repay NCCDC when she refinances the property. Until then, NCCDC receives payments of only $280 per month, which is 6% interest on its $55,834.22 district court judgment. Such a modification of treatment of a secured creditor's claim, after confirmation of a plan in a prior case, is another factor to be considered in assessing good faith (along with the supersedeas issue). See generally Matter of Elmwood Development Co., 964 F.2d 508, 511 (5th Cir. 1992) (second chapter 11 filing was not in good faith where it is designed to undo the terms of a confirmed plan in a prior case).

---

[7]NCCDC states in its Supplemental Memorandum, at 6: "Porter has made no payments on her mortgage for at least six years because of her numerous bankruptcy filings and adversary actions which she has filed."

17

Second, not only is the debtor seeking in this second case to modify the outcome of her first chapter 13 case, but the plan proposed is flawed and could not be approved for a number of reasons.

At the outset, the proffered plan contains no deadline for refinancing. See generally In re Gallagher, 332 B.R. 277 (Bankr. E.D. Pa. 2005); compare In re Jensen, 2007 WL 1673442, at *19 (Bankr. E.D. Pa. 2007) (court "satisfied that the option of refinancing and the timeline for signing an agreement of sale have been properly circumscribed."). Not only is the appeal period indefinite (possibly including a certiorari petition to the United States Supreme Court), the plan has no deadline for refinancing after all appeals have been exhausted.

Moreover, even were a deadline to be included, there is no basis to conclude that refinancing of Ms. Porter's home is feasible. The debtor's schedules, if accurate—showing liens exceeding $56,000[8] on property worth only $60,000 and thus

---

[8]The debtor scheduled NCCDC's secured debt as disputed, presumably because of her pending appeal. Her proposed plan also makes reference to lien avoidance under section 522. The debtor probably assumes that NCCDC's counterclaim judgment is an avoidable judicial lien. If I accept arguendo that section 522(f) could avoid a lien arising from a counterclaim judgment, I would still conclude that Ms. Porter's obtaining timely refinancing is highly problematic.

As mentioned earlier, on October 20, 2000, NCCDC obtained a foreclosure judgment in the amount of $37,835.01. Postjudgment interest in Pennsylvania accrues at 6% simple interest. See 42 Pa. C.S.A. § 8101; 41 P.S. § 201; Equitable Gas Co. v. Wade, 812 A.2d 715, 716 (Pa. Super. 2002). By May 22, 2007—the date of Ms. Porter's bankruptcy filing—post-judgment interest would total about $15,000, yielding a total judgment claim of about $53,000 (plus post-judgment costs and fees if any and if permitted by the mortgage agreement). Moreover, if NCCDC is oversecured, it is entitled to receive post-bankruptcy interest on its allowed secured claim under section 506(b). See, e.g., United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 372-73 (1988).

If one adds the real estate tax lien of $801, the debtor is proposing to refinance a $60,000 residence with about $54,000 of pre-bankruptcy liens, were her appeal unsuccessful but any judgment lien avoided. Refinancing, given the fees involved, would require a lender willing to offer a loan with perhaps a 95% (or higher) loan-to-value ratio which is very unlikely,

(continued...)

18

with less than $4,000 in equity cushion, and with her income very modest and that is

partially reliant on child support for a 23 year old student for whom support may soon

terminate, see 23 Pa.C.S.A. § 4321(3)—suggest a low possibility that refinancing could

be achieved.  See generally In re Fantasia, 211 B.R. 420, 423-24 (B.A.P. 1st Cir. 1998)

(discussing when a proposed balloon plan payment meets plan feasibility requirement); In

re Field, 2005 WL 3148287, at *8-*9 (Bankr. D. Idaho 2005).  And the debtor's proposed

plan, calling for monthly interest payments with a balloon payment to follow if she does

not prevail upon appeal, appears to violate recently enacted 11 U.S.C. § 1325(a)(5)(iii)(I).

See generally In re Denton, 2007 WL 1701921, at *3-*4 (Bankr. S.D. Ga. 2007).


III.


In sum, the totality of the circumstances reveal that the debtor previously

concluded a chapter 13 reorganization wherein she expressly elected not to provide for

the secured claim of NCCDC and to litigate her claims against that creditor in district

court.  Many years later, after adverse rulings, a denial of a stay pending appeal, and the

imminent execution sale of her home, she files a second chapter 13 bankruptcy case.  In

this second case, she proposes to continue her litigation against NCCDC while that

creditor is stayed, and to pay NCCDC only 6% simple interest on its judgment.  And if the

---

[8](...continued)
especially in light of the debtor's modest income.  And neither a foreclosure judgment nor a
statutory tax lien is avoidable under section 522(f).  See generally In re Schick, 418 F.3d 321,
324 (3d  Cir. 2005); In re Higgins, 159 B.R. 212, 214 (S.D. Ohio 1993).

debtor is unsuccessful on appeal, she is unlikely to be able to repay this creditor via refinancing.  Furthermore, she has proposed a reorganization plan that, for a number of reasons, is unlikely to be approved.

When one also considers the possible difficulties, as well as the fairness, of an appellate court considering only the validity of the debtor's claims but not the validity of the related counterclaim, the better exercise of discretion is to conclude that cause exists to terminate the bankruptcy stay under section 362(d)(1) in favor of both the debtor and NCCDC, so that the appeal may be prosecuted fully by both parties and all issues considered by the appellate court.

I decline, however, to dismiss this bankruptcy case at this time, as NCCDC also requests.  While this bankruptcy case is still open, Ms. Porter cannot file any further bankruptcy petitions.  See Freshman v. Atkins, 269 U.S. 121 (1925); In re Peia, 204 B.R. 310 (Bankr. D. Conn. 1996); In re Doss, 133 B.R. 108 (Bankr. N.D. Ohio 1991).  And were Ms. Porter to attempt to voluntarily dismiss her case under section 1307(b), she would be barred from further bankruptcy filings for 180 days under 11 U.S.C. § 109(g)(2).  Furthermore, if a party in interest, such as the chapter 13 trustee, should later seek involuntary dismissal under section 1307(c), NCCDC may then argue that such a dismissal should include a prohibition against further filings.  See generally In re Casse, 198 F.3d 327, 339 (2d Cir. 1999); Haines v. Miller, 2004 WL 1987218, at *2 (E.D. Pa. 2004).

An appropriate order shall be entered.

20

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                    :    Chapter 13

ROSLYN PORTER                            :

            Debtor              :    Bankruptcy No. 07-12977bif

..................................................

ORDER

..................................................

AND NOW, this 18th day of July 2007, for the reasons stated in the

accompanying memorandum, it is hereby ordered that:

1.  The bankruptcy stay is terminated for cause, pursuant to 11 U.S.C. §

362(d)(1), so that the debtor and NationsCredit Consumer Discount Company (also

known as NationsCredit Financial Services Corp.) can exercise their non-bankruptcy law

rights to appeal from and enforce any and all judgments entered by the District Court in

the civil action Porter v. Nationscredit Consumer Discount Co., Civ. No. 03-3768, and

docketed on appeal as 06-5099; and

2. NCCDC's request to dismiss this case is denied without prejudice.

_____
        BRUCE FOX
United States Bankruptcy Judge

copies to:

Ms. Roslyn Porter
7110 Grays Avenue
Philadelphia, PA 19142

Mary Jeffery, Esquire
1600 Locust Street
Philadelphia, PA 19103

Paul J. Giordano, Esquire
1800 John F. Kennedy Blvd., Suite 300
Philadelphia, PA 19103-1815